UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TREVOR BAUER,

    Plaintiff-Appellee,

v.

THE ATHLETIC MEDIA
COMPANY; MOLLY KNIGHT,

    Defendants-Appellants.

Case No. 23-55107

**APPELLEE'S REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION**

Blair G. Brown
David A. Reiser
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Tel: (202) 778-1800

Nell Z. Peyser
**ZUCKERMAN SPAEDER LLP**
485 Madison Avenue, 10th Floor
New York, NY 10022
Tel: (212) 704-9600

# TABLE OF AUTHORITIES

**Cases**

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ............................................................................ 3

*Chavez v. Mendoza,*
   94 Cal. App. 4th 1083 (2001) .............................................................................. 3

*DC Comics v. Pacific Pictures Corp.,*
   706 F.3d 1009 (9th Cir. 2013) ............................................................................ 5

*Flo and Eddie, Inc. v. Pandora Media LLC,*
   No. 20-56134, 2022 WL 1800780 (9th Cir. June 2, 2022) ..................... 9

*Hyde v. City of Wilcox,*
   23 F.4th 863 (9th Cir. 2022) ............................................................................... 7

*Lacey v. Maricopa County,*
   693 F.3d 896 (9th Cir. 2012) ........................................................................ 6, 7

*Langer v. Kiser,*
   57 F.4th 1085 (9th Cir. 2023) ......................................................................... 3, 4

*Makeaff v. Trump University,*
   736 F.3d 1180 (9th Cir. 2013) ............................................................................ 6

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ..................................................................................... 6–7

*Mohawk Industries, Inc v. Carpenter,*
   558 U.S. 100 (2009) ............................................................................................ 4

*USA Waste of California, Inc. v. City of Irwindale,*
   184 Cal. App. 4th 53 (2010) ............................................................................... 3

*Youngevity International v. Andreoli,*
   749 Fed. App'x 634 (9th Cir. 2019) ........................................... 7–8, 9, 10

**Statutes**

Cal. Civ. Proc. Code § 425.16 ..................................................................3

Appellants' opposition confirms that the district court's order determining that Count II sufficiently states a claim is not a final decision for purposes of 28 U.S.C. § 1291, and that the *en banc* Court should reconsider the panel precedents extending appellate jurisdiction to the denial of anti-SLAPP motions.

**I.** Appellants' effort to bolster the merits of their appeal in response to a motion about appellate jurisdiction requires a brief correction. The district court denied the motion to strike Count II of the complaint because Ms. Knight's tweets asserted that the complainant suffered a skull fracture—something everyone now agrees was not true—and the falsity of that assertion was apparent in the medical records attached to the complainant's DVRO petition. 1-EX-32. The court explained that Ms. Knight's tweets would be "nonsensical" unless understood as asserting the "foundational fact" that the complainant had sustained a skull fracture. 1-EX-30–31. And while the district court declined to attribute Ms. Knight's own demonstrated animus towards Appellee to the colleagues whose byline appears on the *The Athletic* article in Count I, the court's denial of the motion to strike and 12(b)(6) motion demonstrates that there was never any serious question that the

1

complaint sufficiently alleged both subjective and objective malice with regard to Ms. Knight herself.

**II.** Appellants have not shown that this Court would have appellate jurisdiction over an order denying an anti-SLAPP motion if the motion panel was not constrained by *Batzel* and subsequent panel precedent adhering to it.

Appellants begin by jumbling First Amendment doctrine together with the anti-SLAPP statute into a policy argument for interlocutory appellate review. But the First Amendment already amply protects the news media against defamation claims by public figures. There is no First Amendment right to an interlocutory appeal of a dismissal motion. Although this Court held in *DC Comics* that *Batzel* survives the Supreme Court's intervening decision in *Mohawk Industries*, it is simply not the case that any order that impinges on an important right or social policy is necessarily appealable before final judgment. And the original purpose of the anti-SLAPP act was to protect community organizations from suits brought to retaliate against them for their advocacy, not to give media corporations an additional weapon for the defense of defamation cases. *See USA Waste of California, Inc. v. City of Irwindale*, 184 Cal. App. 4th

2

53, 66 (2010) ("The original purpose of the anti-SLAPP statute was to protect nonprofit corporations and common citizens 'from large corporate entities and trade associations' in petitioning government."). The anti-SLAPP statute protects the "right of petition" as well "free speech," Cal. Civ. Proc. Code § 425.16, and "[i]t is well established that filing a lawsuit is an exercise of a party's constitutional right of petition." *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1087 (2001). Using the threat of a fee award to chill a lawsuit to set the record straight about a false statement is hardly a core purpose of the anti-SLAPP laws or a compelling policy reason to expand the collateral order doctrine.

Appellants do not and cannot satisfy the collateral order standard. "[T]to fall into this narrow class of immediately appealable orders, a district court decision must (1) be 'conclusive,' (2) 'resolve important questions completely separate from the merits,' and (3) 'render such questions effectively unreviewable on appeal from a final judgment in the underlying action.'" *Batzel*, 333 F.3d at 1024–25.

**Effectively unreviewable.** The Court's decision in *Langer* disposes of effective unreviewability. It makes no difference that the motion to strike in *Langer* involved a motion to strike a trespass

3

counterclaim that the plaintiff alleged had been filed to retaliate for his disability advocacy (a scenario much closer to the legislative purpose of the anti-SLAPP Act than this case) rather than a motion by a defendant. *See* Opp. at 18. The original plaintiff filed the anti-SLAPP motion as a defendant on the counterclaim.

Appellants contend that without an interlocutory appeal, the anti-SLAPP law would be "useless" because the defendant would be subject to discovery and would have to litigate a claim that the district court has determined to be sufficient. Opp. at 19. "The crucial question, however, is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Industries, Inc v. Carpenter*, 558 U.S. 100, 108 (2009). And the availability under *Langer* of an appeal to seek anti-SLAPP fees after final judgment gives a party exercising First Amendment rights substantial protection from unfounded litigation. If the right not to disclose attorney-client privileged information is not effectively unreviewable after a disclosure, then neither is the right of a defamation defendant not to proceed with discovery after the district court has ruled

4

the complaint sufficient under Rule 12(b)(6). To be sure, this Court in *DC Comics* ruled that Circuit precedent in *Batzel* survived *Mohawk Industries*. 706 F.3d at 1015. But on a clean slate, the answer would be different.

**Completely separate.** Appellants argue that the question of whether the anti-SLAPP statute is applicable to the defendant's conduct is separate from the merits. But that does not make the question to be resolved on appeal (the sufficiency of the complaint) separate from the merits.

Appellants miss the significance of *Planned Parenthood*'s holding that—to avoid *Erie* problems—anti-SLAPP motions are resolved under the same standards as an ordinary Rule 12(b)(6) or Rule 56 motion. When the Court decided *Batzel* in 2003, it might have been fair (although the Second Circuit disagrees) to characterize California's anti-SLAPP law as conferring a form of immunity. The anti-SLAPP probability standard seemed to allow striking a claim even if it was legally sufficient under Federal Rules of Civil Procedure 8 and 12, based on the court's prediction prior to any discovery that the claim was not likely to succeed. That is not true after *Planned Parenthood*. No one claims that *Planned*

5

*Parenthood* overturned *Batzel*. *See* Opp. at 16. The problem is that the Court's precedents now include two conflicting lines of decisions, because one line is premised on a form of "immunity" that no longer exists under the other.

Unlike the qualified immunity of an official from an otherwise legally sufficient civil rights claim if the right was not clearly established at the time of the official's conduct, the anti-SLAPP laws do not authorize a federal court to strike a claim that would withstand a Rule 12(b)(6) or Rule 56 analysis. Judge Watford's opinion in *Makeaff* explained why even a predictive probability of success determination is not "completely separate" from the merits. 736 F.3d at 1190. But after *Planned Parenthood*, there is no distinction between the anti-SLAPP standard and the merits at all.

Denials of qualified immunity in a section 1983 case, by contrast, involve a question about clearly established law distinct from the sufficiency of the claim.[1] As the Supreme Court put it in *Mitchell v.*

---

[1] "Under qualified immunity, an officer is protected from suit when he makes a reasonable mistake of law or fact." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012). Appellants are mistaken in describing *Lacey* as "deciding qualified immunity by analyzing sufficiency." Opp. at

6

*Forsyth*, 472 U.S. 511, 547 (1985), immunity "is *conceptually distinct from the merits of the plaintiff's claim that his rights have been violated*" because it turns on a separate question about what the clearly established law is. That is why "[a]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim." *Id.* at 528. After *Planned Parenthood*, denials of anti-SLAPP motions require the court to "determine whether the plaintiff's allegations actually state a claim." That is not a question "completely separate" from the merits.

**Conclusive.** There is also nothing "conclusive" for purposes of interlocutory appeal about deciding that the anti-SLAPP statute applies but that the complaint sufficiently states a claim. As the Court noted in *Youngevity*, a ruling that the anti-SLAPP statute does not apply because the speech is commercial is not appealable, so what Appellants refer to,

---

14. The Court in *Lacey* was explicit that it could consider either of two different questions: sufficiency of the merits *or* immunity. *Lacey,* 693 F.3d at 915. In *Lacey* as well as *Hyde v. City of Wilcox,* 23 F.4th 863 (9th Cir. 2022), the Court chose to decide sufficiency, not the legal question defining the scope of immunity.

Opp. at 18, as the "first prong" of the analysis—the applicability of the anti-SLAPP Act—cannot be the predicate for collateral order review. 749 Fed. App'x at 635. And the denial of a Rule 12(b)(6) motion is not conclusive. A claim that survives under Rule 12(b)(6) may fail on the merits at a later stage in the litigation. Appellants' argument comes down again to the claim that the anti-SLAPP law creates an immunity like qualified official immunity that authorizes dismissal of otherwise valid claims, but that argument does not survive *Planned Parenthood*.

**III.** Appellants take issue with the petition for initial hearing by the *en banc* Court, even though only the *en banc* Court can eliminate the internal conflict in this Court's decisions, and even though granting initial hearing *en banc* would avoid wasted effort addressing the merits. It makes no sense to require a panel to decide a merits issue in the absence of jurisdiction before resolving the jurisdictional question.

It makes all the sense in the world for the *en banc* Court to decide now whether the Court has jurisdiction over this appeal before the parties and the Court expend resources on the merits. *First*—setting aside the precedent that binds this panel—Appellants do not and cannot explain why an order denying an anti-SLAPP motion on the ground that

8

the complaint sufficiently states a claim is a "final decision" within the collateral order doctrine. Whether panels of this Court should remain bound by panel precedent to decide such appeals in the absence of appellate jurisdiction is important to the Court's workload.

*Second*, now that this Court has very recently held that an order denying an anti-SLAPP motion *can* be reviewed on appeal from a final judgment, there is even less reason to continue to stretch the collateral order doctrine to allow interlocutory appeals.

*Third*, Appellants do not deny that this Court's position conflicts with that of the other federal Circuits—most of which do not think anti-SLAPP motions belong in federal court at all. No other Circuit decides anti-SLAPP motions under a Rule 12(b)(6) standard and then allows appeals from their denial. There is no reason to delay a course correction on the scope of the Court's jurisdiction.

Appellants note the denial of a petition for rehearing *en banc* in *Youngevity Int'l v. Andreoli*, 749 Fed. Appx. 634 (9th Cir. 2019). But since then, Judge Bress renewed the call to reconsider appealability of anti-SLAPP motion denials. *Flo and Eddie, Inc. v. Pandora Media LLC*, No. 20-56134, 2022 WL 1800780, at *2–3 (9th Cir. June 2, 2022). And the

9

petition in *Youngevity* came after a panel of the Court had already decided the merits without apparent objection to its jurisdiction to do so.[2]

## CONCLUSION

The Court should hear the jurisdictional question *en banc* and dismiss the appeal.

Dated: March 6, 2023                  Respectfully submitted,

s/ *Blair G. Brown*
Blair G. Brown
David A. Reiser
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
bbrown@zuckerman.com
dreiser@zuckerman.com

-and-

---

[2] The appellee in *Youngevity* did not move to dismiss the appeal for lack of jurisdiction. Appellee's brief contested appellate jurisdiction to review the district court's ruling that the commercial speech exception applied, Appellees' Answering Br. at 10–12, *Youngevity Int'l. v. Andreoli*, No. 18-55031 (9th Cir. July 20, 2018), ECF No. 19, and the denial of a motion to dismiss based on an arbitration provision. *Id.* at 49-54; *id.* at 3 (jurisdictional statement raising the same limited objections); *id.* at 3-4 (issues presented). Appellee's brief did not present the argument made for the first time in a petition for rehearing.

>Nell Z. Peyser
>**ZUCKERMAN SPAEDER LLP**
>485 Madison Avenue, 10th Floor
>New York, NY 10022
>Tel: (212) 704-9600
>npeyser@zuckerman.com
>
>*Attorneys for Plaintiff-Appellee*

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(C) and Circuit Rule 27-1(1)(d) because it uses proportionally spaced typeface and, excluding those portions of the motion that do not count toward the type-volume limitations pursuant to Fed. R. App. P. 32(f), contains 1,997 words on not more than 10 pages. In accordance with Fed. R. App. P. 32(g), this certificate is given in reliance on the word count of the word-processing system used to prepare the motion.

Dated: March 6, 2023

s/ Blair G. Brown  
Blair G. Brown